1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PAULINE DUVAL,                          No.  2:18-cv-2701-KJN

12                  Plaintiff,               ORDER ON PARTIES' CROSS MOTIONS
                                             FOR SUMMARY JUDGMENT
13          v.
                                             (ECF Nos. 16, 22)
14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                    Defendant.
16

17          Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

18   denying her application for Disability Insurance Benefits.[1]  In her summary judgment motion,

19   plaintiff contends the Administrative Law Judge ("ALJ"):  (A) erred in evaluating two medical

20   opinions; and (B) erred at step four in finding she was capable of performing past work as

21   generally performed in the national economy.  The Commissioner opposed, and filed a cross–

22   motion for summary judgment.

23          For the reasons that follow, the court DENIES plaintiff's motion for summary judgment,

24   GRANTS defendant's cross-motion for summary judgment, and AFFIRMS the final decision of

25   the Commissioner.

26   ///

27   _____

28   [1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties
     consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 6, 11.)

# I.     BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS[2]

Plaintiff stopped working in June 2014, and applied for disability insurance benefits on December 1, 2014. (Administrative Transcript ("AT") 172-73.) Plaintiff claimed the following medical conditions: "C5-6 impingement with radiculopathy to upper extremity; Right shoulder impingement with adhesions; Buristis right; L1 compression with nerve root impingement bilaterally; Osteoarthritis - at risk for fracture; Depression; Anxiety; Fatigue; Chronic Pain Syndrome." (AT 69, 83.) Plaintiff's application was denied initially and again upon reconsideration. (AT 68; 82.) Plaintiff, aided by an attorney, sought review of these denials with an ALJ. (AT 116-17.) At a June 12, 2017 hearing, plaintiff testified about her conditions, and a Vocational Expert testified regarding plaintiff's ability to work. (AT 30-67.)

On August 24, 2017, the ALJ issued a decision determining that plaintiff was not disabled. (AT 12–29.) At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since June 1, 2014, her disability onset date. (AT 17.) At step two, the ALJ found plaintiff to have the following severe impairments: acromioclavicular joint osteoarthritis and degenerative disc disease. (Id.) However, the ALJ determined at step three that these impairments did not meet or medically equal the severity of a listed impairment. (AT 19) (citing

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571–76; Bowen v. Yuckert, 482 U.S. 137, 140–42 (1987). The following summarizes the sequential evaluation:

> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

20 C.F.R. Part 404, Subpart P, Appendix 1).)  Based on this information, the ALJ found plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations:

> [Plaintiff can] never climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, and occasionally crawl; occasional overhead reaching with the right upper extremity; should have no exposure to unprotected heights and no exposure to unprotected heights [sic] or heavy moving machinery.

(AT 19.)  In reaching this conclusion, the ALJ stated he compared plaintiff's symptoms to the objective medical evidence in the record, the opinion evidence given by plaintiff's physicians, and plaintiff's expressed symptoms.  (AT 19–24.)  Relevant here, the ALJ found that certain findings in a medical source statement (by plaintiff's treating physician) were inconsistent with other evidence in the record, and restrictive findings by an examining psychologist were also inconsistent with the record.  (AT 21-22.)  Ultimately, the ALJ concluded at step four that plaintiff was capable of performing past relevant work as a sales clerk as generally performed, given the restrictions detailed in the RFC and the testimony of the Vocational Expert.  (AT 24.)

On August 7, 2018, the Appeals Council denied plaintiff's request for review.  (AT 1-6.)  Plaintiff then filed this action within sixty days requesting judicial review of the Commissioner's final decision; the parties filed cross–motions for summary judgment.  (ECF Nos. 1, 16, 22, 23.)

## II.     STANDARD OF REVIEW

The court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard."  Buck v. Berryhill, 869 F. 3d 1040, 1048 (9th Cir. 2017).  Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Edlund v. Massanari, 253 F. 3d 1152, 1156 (9th Cir. 2001).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Id.  The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F. 3d 1035, 1038 (9th Cir. 2008).  Further, the

court may not reverse the ALJ's decision on account of harmless error.  <u>Buck</u>, 869 F. 3d at 1048.

III.   **<u>ISSUES PRESENTED</u>**

Plaintiff argues the ALJ erred in improperly rejecting the medical opinions of a treating physician (Dr. Tarasenko) and an examining physician (Dr. Hermann), arguing the ALJ improperly characterized Dr. Tarasekno's other reports and failed to properly cite evidence contradicting Dr. Hermann's mental restrictions.  Further, plaintiff argues the ALJ erred at step four in finding plaintiff capable of performing past work as a sales clerk as it is "generally performed," arguing the ALJ improperly misclassified plaintiff's "composite job" and relied on the least-demanding portions of the lighter position in finding her able to work.  Plaintiff maintains that once the physicians' evidence is credited as true, the court must remand for benefits.  Alternatively, plaintiff seeks a remand for further proceedings.  (ECF No. 16.)

The Commissioner argues that the ALJ properly rejected the opinions of the two physicians indicating a more-restrictive RFC was warranted, given the inconsistencies in Dr. Tarasenko's own medical reports and given the dearth of evidence supporting Dr. Hermann's mental restrictions.  Further, the Commissioner contends the ALJ properly found plaintiff could perform her past relevant work as generally performed, as he was allowed to rely on the Vocational Expert's testimony that plaintiff's past work corresponds to that of a Sales Clerk, as defined by the Dictionary of Occupational Titles.  Thus, the Commissioner contends the RFC (and decision as a whole) is supported by substantial evidence, which should result in the ALJ's opinion being affirmed.  (ECF No. 22.)

IV.   **<u>DISCUSSION</u>**

A.    **The ALJ provided specific and legitimate reasons to discredit the opinions of a treating physician and an examining psychologist.**

**<u>Legal Standard</u>**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  <u>Holohan v. Massanari</u>, 246 F. 3d 1195, 1201–02 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F. 3d 821, 830 (9th Cir. 1995).  Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an

4

examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F. 3d at 1202. The medical opinion of a claimant's treating doctor is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record. 20 C.F.R. § 404.1527(c)(2)–(6).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. Lester, 81 F. 3d at 831. A contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. An ALJ provides specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F. 2d 747, 751 (9th Cir. 1989). Conversely, to reject an uncontradicted opinion of a treating or examining doctor, the ALJ must state "clear and convincing reasons that are supported by substantial evidence." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

1. Dr. Tarasenko

Contrary to plaintiff's contentions, the undersigned finds the ALJ was within his authority to disregard the June 2015 assessment completed by Dr. Tarasenko (AT 319-23), and provided specific and legitimate reasons for doing so. Lester, 81 F. 3d at 831 ("A contradicted opinion of a treating or examining professional may be rejected for 'specific and legitimate' reasons."). As noted by plaintiff, Dr. Tarasenko's assessment found plaintiff's shoulder and lifting-capacity to be more impaired than the ALJ allowed for in the RFC, called into question plaintiff's ability to concentrate due to her chronic pain, and called for much greater restrictions on plaintiff's capacity to sit, stand, stoop, kneel, bend, climb and work without rest. (See Id.) The ALJ gave these restrictions "little weight," stating they were "[in]consistent with the record as a whole,"

including that "Dr. Tarasenko's own treating notes which regularly show that pain does not interfere with concentration and that the claimant is able to bathe herself clean her house converse meaningfully cook dress herself drive feed herself find her way home ride public transportation. 10F3 10F12 10F16 10F20." (AT 22.) The ALJ also noted Dr. Tarasenko's previous findings of "normal shoulder findings" were inconsistent with the above restrictions. (AT 22; citing AT 328.) Despite some errant citation on the ALJ's part,[3] the decision provides enough citation and rationale for the court to review. Simply, it appears the ALJ was confronted with contrasting diagnoses on these points. For example, while Dr. Tarasenko's June 2015 assessment found plaintiff's reach was severely restricted (see AT 22), the doctor also previously found: "Shoulders have normal appearance bulk and tone. There is no bony tenderness to palpation of the clavicle or at the acromioclavicular joint. Shoulder has full range of motion. No evidence of impingement or rotator cuff pathology. Neer Hawkins and Speed's tests are negative. Biceps and triceps function are normal." (AT 328; compare also AT 321-22 with AT 326, 339, 343.) It is for the ALJ to resolve such conflicts. Edlund, 253 F. 3d at 1156. Despite plaintiff's citations to other portions of Dr. Tarasenko's record, the court cannot reweigh the evidence and must "uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation." Tommasetti, 533 F.3d at 1038.

### 2. Dr. Hermann

Again contrary to plaintiff's contentions, the undersigned finds the ALJ provided specific and legitimate reasons for discounting the mild-to-moderate-restrictions, as found by Dr. Hermann after a March 2015 psychological exam. (AT 300-05.) Dr Hermann called into question plaintiff's ability to take direction, maintain regular attendance, stay on task, interact with others, manage stress, and otherwise generally work without interruption from her psychiatric symptoms. (AT 304.) The ALJ gave this assessment "partial weight" because it was inconsistent with the record as a whole. (AT 21). The ALJ continued:

---

[3] Plaintiff makes much of the ALJ's citation to a portion of the record that is nothing more than a transcription of a phone call, where plaintiff's impairments were noted. (See AT 335.) While the undersigned agrees that this citation was likely in error, it does not call into question the remainder of the ALJ's findings.

> The record shows that limitations are less than mild as explained in the severity finding. This is more consistent with the claimants activities of daily living and the lack of documented mental symptoms in the record. This assessment was based on only one interview. Dr. Hermann citation to the claimants lack of access to health care is immaterial in the mental impairment context given the claimants testimony that it was her physical not mental problems that affected her ability to work, and given the extent of the claimants mental abilities as described above that shows non-severe mental impairments.

(Id.)  A review of the record (or, those portions of the record cited by the ALJ in the decision) supports this conclusion.  (See AT 223-40; 303, 326, 339.)  The court also notes that it is plaintiff's burden in the first four steps, and plaintiff reaffirmed at the hearing that her alleged inability to work stemmed from her physical, and not mental, problems.  (See AT 1025.)

**Conclusion**

As the ALJ provided specific and legitimate reasons to assign less weight to these two opinions, the court finds that substantial evidence exists in the record to support the ALJ's formulation of plaintiff's RFC.  The analysis now turns to whether, based on this RFC, the ALJ erred in assessing plaintiff's ability to perform her past work, as generally performed.

**B.      Step Four**

**Legal Standard**

After the RFC is formulated, the ALJ is to examine the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant can perform her past relevant work as she performed it or as it is generally performed, she is not disabled.  Id.; Valencia v. Heckler, 751 F.2d 1082, 1086-87 (9th Cir. 1985).  ALJs may use either the 'actually performed test' or the 'generally performed test' when evaluating a claimant's ability to perform past work.  Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016).

The generally-performed test is designed for situations where a claimant's past job was especially demanding when compared with industry standards.  Stacy, 825 F.3d at 569.

> A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually

required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

Id. (quoting SSR 82-61, 1982 WL 31387 (1982)).  The Dictionary of Occupational Titles is the presumptive authority on how a job is generally performed."  Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001).  However, the ALJ may also rely on the testimony of a vocational expert to support a conclusion, so long as the VE's testimony is based on evidence supported by the record.  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).

Despite this generally-performed test, "the ALJ may not classify a past occupation according to the least demanding function."  Carmickle v. Comm'r, 533 F.3d 1155, 1166 (9th Cir. 2008) (quoting Valencia, 751 F.2d at 1086.).  This situation tends to arise when the "least demanding aspect of the claimant's past job was something the claimant did less than half the time."  Stacy, 825 F.3d at 570.  "When a job is 'composite'—that is, it has significant elements of two or more occupations and therefore has no counterpart in the DOT—the ALJ considers only whether the claimant can perform his past relevant work as actually performed."  Cook v. Colvin, 2015 WL 162953, *7 (C.D. Cal. Jan. 13, 2015).  Courts have recognized that reconciling the generally-performed test with this least-demanding-function test is "difficult, but not impossible."  Stacy, 825 F.3d at 570.  To this end, the Ninth Circuit in Stacy held that an ALJ may rely on the generally-performed test where "(1) the least demanding function is a task that the claimant actually performed most of the time; and (2) the DOT defines the claimant's past job as requiring only that least demanding function."  Id.  The burden remains plaintiff's at step four.  Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002).

**Analysis**

Here, the ALJ concluded that plaintiff "is capable of performing past relevant work as a Sales clerk, DOT 290.477-014, svp 3 light, as generally performed[;] this work does not require the performance of work-related activities precluded by the claimants residual functional capacity."  (AT 24.)  In so concluding, the ALJ reasoned "[t]he vocational expert testified that the claimant could perform this work as generally performed but not as actually performed which was at the medium exertional level[;] I accept and adopt [this] testimony . . . ."  (Id.)

8

Plaintiff argues the ALJ's finding, that she can perform her past relevant work at the Home Goods store, is legally erroneous. Plaintiff notes that she described her job as one requiring her to "stand[] on her feet 8 hours per day and lift[] up to 50 pounds"—which is in excess of her RFC. (See AT 212.) Plaintiff also argues she explicitly described the job as one requiring "customer service" duties and "cashier" duties, each of which allegedly have their own entries in the DOT. (Id.) Plaintiff notes that the VE herself stated plaintiff's position at Home Goods "performed at a higher SVP and higher exertional [level]" because "she was a lead . . . so she had some more extra duties than just a regular sales clerk . . . ." (AT 1033.) Thus, plaintiff contends her job at the Home Goods store was a 'composite job,' and so the ALJ was required to evaluate her position as actually performed. Cook, 2015 WL 162953 at *7.

Essentially, plaintiff's argument is one of misclassification.[4] The court, however, disagrees with this contention. The Vocational Expert in this case testified that she classified plaintiff's past work at the Home Goods store as a "Sales Clerk," DOT 290.477-014. (AT 1033.) The ALJ was within his authority to rely on this testimony, so long as there was evidence in the record to support the VE's testimony. Johnson, 60 F.3d at 1435. There was. Plaintiff's February 2015 work-history report does in fact describe her job as one requiring "customer service" duties (AT 212), but so does the DOT's description of a sales clerk. See 1991 WL 672554 (1991) ("Obtains merchandise requested by customer or receives merchandise selected by customer. Answers customer's questions concerning location, price, and use of merchandise."). Similarly, this DOT entry describes significant cashier duties. See Id. (Obtains or receives merchandise, totals bill, accepts payment, and makes change for customers in retail store . . . Totals price and tax on merchandise purchased by customer, using paper and pencil, cash register, or calculator, to

---

[4]     Insomuch as plaintiff proffers arguments that the ALJ erred in finding plaintiff able to perform her past work as actually performed, this argument is inapposite. The ALJ explicitly stated she could perform her past work "as generally performed." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir.2007) (the court may review only the reasons stated by the ALJ "and may not affirm the ALJ on a ground upon which he did not rely.").
    Similarly, plaintiff at times appears to proffer arguments concerning her other past-relevant work at JC Penney, which the VE classified as a "Department Supervisor." Any such argument is similarly inapposite, as the ALJ did not find plaintiff could perform this past position, either as she performed it or as generally performed. Orn, 495 F.3d at 630.

determine bill. Accepts payment and makes change . . . Removes and records amount of cash in register at end of shift. May calculate sales discount to determine price.").  Plaintiff is correct that her description of her position at the Home Goods store indicates she performed significantly more lifting and carrying than a typical Sales Clerk, but this discrepancy is exactly why the generally-performed test exists.  Stacy, 825 F.3d at 569 ("A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy.") (quoting SSR 82-61, 1982 WL 31387).  Thus, given that the discrepancies alleged by plaintiff are insignificant, and given that the least-demanding functions of plaintiff's job (customer service, cashier, stocking shelves, counters or tables with merchandise—with "a lot [of] help.") correspond to the DOT's description of a Sales Clerk, the ALJ's decision to rely on the VE's classification was not in error.  Stacy, 825 F.3d at 570; see Toulou v. Saul, 2020 WL 1131257, *1 (9th Cir. Appx March 5, 2020) (reaffirming Stacy and a claimant's burden at step four); cf. Migala v. Berryhill, 2018 WL 1989550 *7 (N.D. Cal. Mar 14, 2018) (affirming ALJ's 'as generally performed' determination where the claimant's main duties aligned with the DOT position cited by the VE, that her supervisory role was insignificant, and thus her prior work was not 'composite'); Coehoorn v. Berryhill, 2017 WL 1407636, *8-9 (C.D. Cal. Apr. 19, 2017) (finding the claimant's prior work as a grinding machine operator to align with the VE's citation to a particular DOT entry, despite performing it at a higher exertional level); with Broom v Berryhill, 2017 WL 1079930 (E.D. Cal. Mar. 21, 2017, Brennan, M.J.) (remanding at step four where ample evidence demonstrated the claimant's past prior work was a composite job, where his work history report labeled his job as 'warehouse supervisor,' which gave him supervisory, hiring, and firing responsibilities, but also where he spent half his day as a 'lead worker,' which required him to perform significant manual labor—which was not included in the DOT's description of 'warehouse supervisor.').

Finally, the undersigned notes that if plaintiff wished to proffer additional evidence distinguishing her Home Goods position from that of a Sales Clerk, she could have done so at the hearing.  Lewis, 281 F.3d at 1083.  At the start of the hearing, counsel for plaintiff adduced

significant testimony about the JC Penney position, but agreed to move to other topics before making a record on her Home Goods position. (<u>See</u> 1011-1014.) Later in the hearing, the VE testified that the Home Goods position equated to a Sales Clerk position, SVP 3 with light strength, but SVP 4 with medium strength as performed. (<u>See</u> AT 1033.) After the ALJ adduced testimony, counsel for plaintiff asked only three questions, none of which concerned the alleged misclassification. (<u>See</u> AT 1037-38.) On this record, the undersigned cannot say the ALJ erred in accepting the VE's testimony as to classification, as it was plaintiff's burden to show otherwise. <u>Lewis</u>, 281 F.3d at 1083.

**<u>Conclusion</u>**

Because the ALJ did not err at step four, the Commissioner's conclusion that plaintiff is not disabled is not in error. <u>Buck</u>, 869 F. 3d at 1048. Thus, judgment will issue in favor of the Commissioner.

**<u>ORDER</u>**

Accordingly, IT IS HEREBY ORDERED that:

1. The Commissioner's cross-motion for summary judgment (ECF No. 22) is GRANTED;

2. Plaintiff's motion for summary judgment (ECF No. 15) is DENIED;

3. The ALJ's decision is AFFIRMED; and

4. The Clerk is directed to enter judgment in the Commissioner's favor and close the case.

Dated: April 8, 2020

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

duva.2701